UNITED STATES of America,

v.

Carlos MARTINEZ, and Esvin Martinez, Defendants.

No. CR. AW–03–102.

United States District Court, D. Maryland, Southern Division.

May 5, 2003.

Donna C. Sanger, Assistant United States Attorney, Greenbelt, Maryland, for the United States of America.

Daniel W. Stiller, Assistant Federal Public Defender, Greenbelt, Maryland, for Defendant.

### MEMORANDUM OPINION

WILLIAMS, District Judge.

Currently pending before the Court are a number of pre-trial motions submitted by Carlos Martinez ("Defendant"), one of the two named defendants in the above-captioned case.[1] In his motions, Defen-

1. Esvin Martinez, a co-defendant, filed pre- trial motions separately.

dant seeks, *inter alia*, the suppression of evidence allegedly obtained in violation of the Fourth Amendment and the suppression of statements allegedly obtained subsequent to an involuntary waiver of Defendant's constitutional rights. The motions have been fully briefed by both sides. The Court held an evidentiary hearing on April 30, 2003. Upon consideration of the arguments made in support of, and opposition to, the motions, the Court makes the following determinations.

## I.

On February 18, 2003, U.S. Customs Officials inspected two packages at the United Parcel Service ("UPS") international hub in Miami, Florida. The two packages were addressed to Samuel Garcia at 8312 14th Avenue, Apt. 302, Hyattsville, Maryland, 20783. Each package bore the same phone number. The return address listed on both packages was in Guatemala City, Guatemala. Upon inspection of the packages, the agents found three leather seat covers. After conducting x-rays on the seat covers, the agents uncovered three (3) kilograms of a white powdery substance, which tested positively for the presence of cocaine.

The packages were forwarded to the Office of the Special Agent in Baltimore, Maryland. A search in a database for the name Samuel Garcia turned up no positive identification. Further investigation by the agents revealed that the address listed on the packages was for an apartment leased by Defendant. The officers also checked the phone number on the packages. Their search revealed that the phone number on the packages was that of Defendant.

The agents formulated a plan to effectuate a "controlled delivery" of the packages to the listed apartment. The agents appeared before a magistrate who granted the agents judicial authorization to place an electronic tracking device in the packages. The agents removed the majority of the cocaine from the packages leaving only a "representative sample" of one (1) gram. The agents also inserted a tracking device. The device was rigged so that it would emit signals at a certain rate while the packages were closed. When the packages were opened, the rate of the radio signals would change alerting the agents to the fact that the recipients had opened the package. The agents did not obtain a search warrant for entry into Defendant's home.

The delivery was set for February 21, 2003. Special Agent Dexter Dixon testified that the officers placed an undercover agent in a UPS outfit to carry out the delivery. Defendant accepted and signed for the packages. The agents had brought with them to the scene an "entry team" in the event that the tracking device sounded. Sometime after the package was accepted, the tracking device signaled that the packages were open. Immediately thereafter, the agents made a forcible entry into the apartment.

Upon entry, the agents secured the premises and did a protective sweep of the apartment. Defendant was handcuffed and placed in the living room area. Agent Francisco Gerardo, a Spanish speaking agent, informed Defendant in Spanish that it would be better for him if he cooperated with the agents. He also mentioned something about deportation, though it was unclear what was said exactly. Defendant was then read his *Miranda* warnings in Spanish. He then signed a waiver of his rights.

## II.

Defendant raises several arguments for why both the evidence seized subsequent to entry and the statements made subsequent to the *Miranda* warnings should be

suppressed.[2] Defendant's overarching argument is that the forcible entry was made without a warrant and that no exigent circumstances existed to justify the actions of the agents. Defendant further argues that any statements made by Defendant after the reading of the *Miranda* warnings are subject to suppression because Defendant's waiver of his rights was either coerced or involuntary.

### A) *Warrantless Entry*

■ It is undisputed that the officers forcibly entered the apartment of Defendant without first obtaining judicial approbation. The government has asserted, however, that an exception to the warrant requirement applies in that exigent circumstances existed to justify the agents' entry. Defendant counters that the government has failed to carry its burden of establishing exigent circumstances[3] in that (a) the agents had an opportunity to obtain a warrant but failed to do so, and/or (b) the agents impermissibly created the exigent circumstances on which they seek to rely to justify the warrantless entry.

The Fourth Amendment prohibits government agents from conducting "unreasonable searches and seizures." U.S. Const. amend. IV. "It is a 'basis principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). "Nevertheless, an exception to the warrant requirement is made when certain exigent circumstances exist." *United States v. Cephas*, 254 F.3d 488, 494 (4th Cir.2001). "For example, when police officers ...

reasonably believe that evidence may be destroyed or removed before they could obtain a warrant, exigent circumstances justify a warrantless entry." *Id.* at 494–95. The Fourth Circuit has stated that courts should take the following factors into account when considering the government's claim of exigent circumstances: (1) the degree of urgency involved and the amount of time required to obtain a warrant; (2) the officers' reasonable belief that contraband is about to be destroyed; (3) the possible danger to police officers at the site; (4) information indicating that the possessors of the contraband are aware that police are on their tail; and (5) the ready destructibility of the contraband. *See United States v. Reed*, 935 F.2d 641, 642 (4th Cir.1991)(citing *United States v. Turner*, 650 F.2d 526, 528 (4th Cir.1981)). There is, however, no "precise formula" because "emergency circumstances will vary from case to case." *Id.* at 643.

Upon review of the facts in this case, the Court concludes that the agents reasonably concluded that exigent circumstances existed at the time of the entry. Forcible entries into a home are valid when exigent circumstances exist even in the absence of a warrant. When the packages were delivered, the agents were unsure what was to be the final destination for the contraband. They had run a check on the name "Samuel Garcia"-the name listed on the package-and they could find no identifiable match. They knew very little about the apartment listed on the package. In fact, they had no knowledge of any prior drug activity at the apartment which would have led to the conclusion that the package would be opened immediately after it had

---

**2.** The Government indicated at the hearing that it did not intend to use the statements made prior to the *Miranda* warnings so the Court need not analyze the validity of those statements.

**3.** *See Welsh v. Wisconsin*, 466 U.S. 740, 749, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984)(burden on government to establish exigent circumstances).

been accepted. On the morning of the controlled delivery, the packages were signed for by someone living in the apartment. Within minutes, the packages were opened and the tracking device began to signal to the agents that the packages had indeed been opened. In that instance, the agents concluded (a) that because the contents of the packages had been noticeably altered, the suspects would have become immediately aware that they were under police surveillance; and (b) that there was a serious threat that the suspects would destroy the contraband. Because of those circumstances, the agents reasonably concluded that if they sought a warrant from a magistrate, the suspects would use the delay to destroy the contraband.[4]

Defendant makes two interrelated arguments for why the exigent circumstances exception should not apply. First, Defendant argues that because the officers had a chance to obtain a warrant prior to executing the controlled delivery, they cannot make a claim of exigent circumstances. Since the Fourth Circuit has not squarely addressed the issue, Defendant relies on cases-mostly out of the Eighth Circuit-that hold that, in certain cases, officers that have an opportunity to obtain a warrant prior to effecting a controlled delivery but proceed with the controlled delivery in the absence of a warrant cannot rely on a claim of exigent circumstances. *See, e.g.,*

*United States v. Duchi,* 906 F.2d 1278 (8th Cir.1990).[5]

While the argument that the agents' failure to obtain a warrant when the opportunity presented itself has some superficial appeal, the Court cannot accept it in this case for one important reason. In order to hold that the officers' failure to obtain a warrant negates the exigent circumstances upon which they rely in defense of their warrantless entry, the Court would have to make the predicate finding that they *could* have obtained the warrant in the first place. If the officers could not have obtained the warrant, then any argument that the failure to do so proves fatal to a claim of exigent circumstances cannot withstand scrutiny. In *Duchi,* the Eighth Circuit, in rejecting a claim of exigent circumstances, noted that the officers in that case had "identifiable individuals at accurate addresses." *See Duchi,* 906 F.2d at 1283. Furthermore, the Court emphasized that the delivery occurred at the "denouement of a governmental investigation" into *those* people and *those* addresses. *Id.* (quoting *United States v. Johnson,* 904 F.2d 443, 445 (8th Cir.1990)). A crucial factual finding, therefore, in deciding to hold that no exigent circumstances existed was the finding that the officers had ample information upon which to base a warrant application. The *Duchi* Court's implication is that after an exhaustive investigation of particular subjects (including

---

4. Other courts have noted that the risk of destruction of evidence is particularly acute in contraband cases as opposed to cases with other forms of less destructible evidence. *See United States v. Santa,* 236 F.3d 662, 669 (11th Cir.2000)(quoting *United States v. Tobin,* 923 F.2d 1506, 1510 (11th Cir.1991)).

5. The Court notes that an "opportunity to obtain a warrant" does not find a place in the list of factors that the Fourth Circuit has enumerated to aid district courts in making determinations as to exigent circumstances. *See Turner,* 650 F.2d at 528. For that reason,

while the argument Defendant makes would have weight in the Eighth Circuit, the Court has no guidance as to whether such an argument would find acceptance in this one. *See Duchi,* 906 F.2d at 1283 (relying upon another Eighth Circuit case for the proposition that the opportunity to obtain a warrant is relevant, although not determinative, to the inquiry on exigent circumstances). One district court in this Circuit did, however, apply this as a factor in its determination of exigency or the lack thereof. *See United States v. Cucci,* 892 F.Supp. 775, 787 (W.D.Va.1995).

surveillance) provides the officers with enough information to obtain a warrant, they should obtain a warrant before making a forced entry. The counterpoint to such an argument is that if the officers lack certainty as to the individual at the address and as to whether any criminal activity is afoot on the premises, the officers can not be faulted for failing to obtain a warrant prior to the arising of exigent circumstances.[6]

Here, the agents had very little certainty about the address where the controlled delivery was to be accomplished. They had an apparently false name on the packages. They did not know whether the packages were meant to arrive at the apartment as a final destination or whether the packages were to be moved to a secondary location. Most significantly, there was no evidence of prior drug activity at the apartment. In the absence of evidence that the officers could have obtained a warrant, Defendant's argument must fail.

A case from the Eighth Circuit is apposite. There, Defendant made a similar argument to the one now before the Court. The facts were similar to this case in that the package apparently had a false name and in that the officers were unclear as to whether the address on the package was the final destination for the contraband.

The Eighth Circuit rejected Defendant's argument that the officers should have obtained a warrant, finding that the officers, unlike in *Duchi*, did not have enough investigation under their belt to acquire a warrant. The Court stated:

> The agents knew neither whether the address they credited the package label with describing was the intended address, nor whether the occupant of that address would be willing to accept the package. Secreting a transmitter within the package would have been redundant had there been no reason to doubt that the agents were delivering the package to the final destination .... With no additional information about the package available to the agents, they had reason to question not only whether Johnson's address was the address intended on the package label, *but also whether the address was the actual site of criminal activity* .... Because the delivery to Johnson's apartment might very well have turned out to be only the first step in the agents' investigation, they were not required to seek a warrant but could legitimately wait in order to gather additional evidence.

*United States v. Johnson*, 904 F.2d 443, 445–47 (8th Cir.1990)(emphasis added)(internal quotations omitted).[7] As in the

---

**6.** Defendant argues vehemently that the agents could have obtained an "anticipatory warrant"-a warrant that contains some conditional event which triggers the warrant's mandate when the condition occurs. Indeed, the Fourth Circuit has approved of such a warrant. *See United States v. Goodwin*, 854 F.2d 33 (4th Cir.1988). But *Goodwin* does not support Defendant's argument because in that case-unlike in this case-the officers had adequate information (above and beyond the delivery of the contraband) with which they could seek a warrant. For example, in that case, which involved the receipt of child pornography, the officers had the following information: (a) intercepted correspondence from

the subject indicating a pre-disposition for the material; (b) verification of the suspect's address; and (c) a request by the individual for the materials. *See id.* at 36. With that wealth of information, it was more feasible to seek and obtain an "anticipatory warrant" because the triggering event-the receipt and acceptance of the materials-was just the final piece of the puzzle. In this case, it would be inappropriate to require an "anticipatory warrant" when the investigation was in its initial phases.

**7.** This case can be contrasted with another case out of the Eighth Circuit-which unfortunately shares the same name-where the Court

*Johnson* case, the Court here is unconvinced that the agents were required to seek a warrant for Defendant's apartment. Moreover, it is far from clear whether such a warrant was obtainable in the first place. In that the investigation was in its initial phases, and not in its final moments, the Court will not reject a valid claim of exigent circumstances on the grounds that the officers should have obtained an "anticipatory warrant".

▪ Defendant's alternative theory is that the agents cannot rely upon exigent circumstances of their own creation. Courts in other Circuits have found that in certain cases officers cannot rely upon a claim of exigent circumstances because "the police had created or greatly increased the danger that evidence would be destroyed." *See United States v. Campbell,* 261 F.3d 628, 633 (6th Cir.2001).[8] It is important to note at the outset that no published Fourth Circuit opinion has specifically set out the legal standards for rejecting a claim of exigency on the grounds that the blame for the exigency rested with the officers. Regardless, the Court does not find that this case involves "manufactured exigencies". *United States v. Arias,* 992 F.Supp. 832, 837 (S.D.W.Va. 1997).

In this case, contrary to the defense's arguments, the agents did not have a set plan to enter the apartment. The plan was to follow the package to its final destination. The defense argues that the agents' preparation for a forced entry to the apartment indicates a set plan to go in. That the officers were prepared for a myriad of situations (one of which occurred) is no reason to find fault in the agents' actions. In a similar case from the Eleventh Circuit, the Court of Appeals there upheld the officers' actions and found no "manipulation" of events to create an exigency. *See United States v. McGregor,* 31 F.3d 1067 (11th Cir.1994), *cert. denied,* 516 U.S. 926, 116 S.Ct. 328, 133 L.Ed.2d 228 (1995). There the defendant claimed that "the inspectors knew before inserting the beeper that when it sounded, they would need to act immediately; so, they, before the delivery of the drugs, could have gotten a warrant to search the house." Defendant further sought suppression of the evidence on the grounds that the agents had "created the exigency." *See id.* at 1069. The Court rejected defendant's argument:

> The planting of the beeper created no exigency. The exigency would result from the parcel's being opened and the tracking device being discovered. A warrant must be executed within a certain amount of time of its issuance and is only valid for certain persons and places. From the record, it appears that the inspectors were unsure about when, where, or by whom this box would be opened, although McGregor was suspected. In this case, a beeper was used because the identity of the ultimate holders of the cocaine and the place where the box would be opened were the focus of the inspectors' interest; and

---

held that the officers had adequate information to acquire a warrant but simply failed to do so. *See United States v. Johnson,* 12 F.3d 760, 765 (8th Cir.1993)(noting the fact that Postal Inspectors had a clearly identifiable address and were able to obtain a warrant within moments after the forced entry).

**8.** Without explicitly so holding, the Fourth Circuit seemed to recognize the possibility that a claim of exigent circumstances can be invalidated by the actions of the officers in creating the exigency. *See United States v. Grissett,* 925 F.2d 776, 778 (4th Cir.1991), *cert. denied sub nom.,* 500 U.S. 945, 111 S.Ct. 2245, 114 L.Ed.2d 486 (1991)("In addition, we can not accept appellants' claim that the exigent circumstances were somehow of the officers' own making.").

these persons and that place were not yet known.

*Id.* at 1069. The Court finds the same reasoning to be applicable in this case. The officers did not engineer an exigency in the name of avoiding the warrant requirement. Their intent was to follow the packages to the place where they were opened. This was not a "staged" warrantless entry. Under these circumstances, it was not unreasonable to use the strategy of placing the beacon in the box in the hopes of tracking the location of the contraband.[9]

In the moments after the tracking device signaled to the agents that the package had been opened, exigent circumstances existed. As a result, the agents were not required to obtain a warrant, which would have risked the destruction of the evidence. The Court is unpersuaded that the officers could have obtained a warrant in advance of the entry. Furthermore, the officers did not "create" the exigency upon which they rely. The evidence seized subsequent to the warrantless entry will not be suppressed.[10]

### B) *Waiver of Fifth Amendment Rights*

■ Defendant contended at the evidentiary hearing that his waiver after being read the *Miranda* warnings was either involuntary or coerced. "The inquiry into whether an individual waived effectuation of the rights conveyed in the *Miranda* warnings has two distinct dimensions." *United States v. Cristobal*, 293 F.3d 134, 139 (4th Cir.2002). First, the Court must determine whether the rights were relinquished by deliberate choice, free of intimidation, coercion or deception. *See id.* Second, the choice must be made with the " 'requisite level of comprehension' ", in terms of the rights being waived and the consequences attendant to waiving those rights. *See id.* (quoting *Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986)). The test for determining whether a decision to waive *Miranda* is the same as the test for voluntariness under the Due Process Clause. *See id.* at 140. Therefore, a waiver of *Miranda* is involuntary if the "defendant's will has been 'overborne' or his 'capacity for self-determination critically impaired.' "

**9.** The *McGregor* Court explicitly noted that the *Duchi* case was distinguishable because in that case the agents were at the denouement of their investigation. *See id.* at 1070, n. 2. The Court finds that here the facts are more closely analogous to the *McGregor* case than to the *Duchi* case because the large number of unknown contingencies prevents a finding that the officers "created" the exigent circumstances. In adopting the Eleventh Circuit's reasoning on this issue, the Court implicitly rejects the "reasonably foreseeable" test enunciated by the *Duchi* Court. *See Duchi*, 906 F.2d at 1285 (exigent circumstances created by the officers when it was a "reasonably foreseeable" consequence of changing the package that the suspects would attempt to destroy the contraband).

**10.** In so holding, the Court is distinguishing this case from *United States v. Roundtree*, 694 F.Supp. 1230 (W.D.N.C.1988), where the Court suppressed evidence found subsequent to a warrantless entry. Two important facts distinguish that case from this one. First, there the officers specifically testified that it was the plan to forcibly enter *that* particular dwelling. Here, the agents accepted it as a possibility but had a plan only to follow the packages. Second, and more importantly, there the Court concluded that the officers could have obtained a warrant but based that conclusion in part on the fact that the suspected dwelling was the situs for drug trafficking. *See id.* at 1232–33 ("[The officers] knew the address was a source for drugs being distributed in the Charlotte area."). The agents here had no information regarding this apartment-and, therefore, no reason to suspect drug activity in it-other than the name of the lessee. Unlike in *Roundtree*, the agents did not have the same amount of information which would have facilitated the application for a warrant.

*United States v. Pelton,* 835 F.2d 1067, 1071 (4th Cir.1987)(quoting *Schneckloth v. Bustamonte,* 412 U.S. 218, 225, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)).

The facts in this case do not indicate that any of the actions of the agents caused Defendants will to be "over-borne" or his capacity for self-determination "critically impaired". The only evidence that Defendant presents in support of his proposition is that (a) the agents told Defendant that he could help himself; and (b) that they mentioned deportation. The agents neither threatened Defendant nor deceived him. Furthermore, they told him truthfully that certain benefits can come of suspects from cooperating with the government; the agents' comment in no way indicates that Defendant's will was over-borne. The argument that Defendant was incapable of understanding his rights and of knowingly waiving them is unsupported by the record. Any statements made to the agents after the waiver of *Miranda* will not be suppressed.

### C) *International Seizure of the Packages*

■ Defendant argues that his rights were violated when the packages were seized by the U.S. Customs Officials. First, the Court has serious questions about whether Defendant has standing to challenge that seizure since he has not conceded ownership of the packages. In any event, the Court finds no authority for the idea that the seizure was unlawful. The authority of Customs Agents to conduct examinations of incoming international mail is codified by statute. *See* 19 U.S.C. § 1582. Furthermore, the Supreme Court has held that searches at the border are reasonable under the Constitution by virtue of their occurring at the border. *See United States v. Ramsey,* 431 U.S. 606, 616, 97 S.Ct. 1972, 52 L.Ed.2d 617 (1977). This has come to be known as the border search exception to the reasonableness requirement. *See United States v. Oriakhi,* 57 F.3d 1290 (4th Cir.1995). As such, the argument that the seizure of the parcels is constitutionally problematic has no merit.[11]

### D) *Motion to Strike Surplusage*

Defendant moves to strike certain portions of the indictment as surplusage. Rule 7(d) of the Federal Rules of Criminal Procedure grants discretion to the trial court to strike portions of the indictment. *See United States v. Poore,* 594 F.2d 39, 41 (4th Cir.1979). The purpose of the rule is to prevent inclusion in the indictment of allegations that are inflammatory or prejudicial. *United States v. Ramirez,* 710 F.2d 535, 544–45 (9th Cir.1983). Specifically, Defendant argues that the inclusion of the enhancement statute under 21 U.S.C. § 962(a) should be stricken. The Court fails to see how such an inclusion is in anyway prejudicial. Furthermore, the jury will be instructed as to the law by the Court, not as to the "law" in the indictment. The motion to strike must be denied.

### III.

Because the agents did not violate Defendant's constitutional rights when they forcibly entered the apartment upon fear that evidence would be destroyed, the motion to suppress evidence will be denied. The motion to suppress statements will also be denied because there has not been a showing that Defendant waived his

---

**11.** Defendant's argument that their rights were violated by the inclusion of the tracking device is also unsupported by the record. The government went before a Magistrate to obtain judicial permission for the tracking device, and received said permission. The Magistrate based his issuance upon a finding of probable cause.

rights involuntarily or as the product of coercion. For the reasons herein stated, the motions to strike surplusage and the motion to suppress evidence based on the border search will also be denied. An Order consistent with this Opinion will follow.