Michael NORRIS *v.* STATE of Arkansas

CR 98-1429                                          993 S.W.2d 918

Supreme Court of Arkansas
Opinion delivered July 15, 1999

[Supplemental opinion on grant of rehearing issued
September 16, 1999.]

*Doug Norwood*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Vada Berger*, Ass't Att'y Gen., for appellee.

W<span></span>H. "DUB" ARNOLD, Chief Justice. This is a case involving warrantless activity surrounding entry into the appellant's home and his eventual arrest for the offense of driving while intoxicated, first offense. On December 21, 1997, at approximately 1:00 p.m., appellant was allegedly seen driving erratically by another driver. The citizen followed appellant to his home and called the police. Based on the citizen's information, the officer approached appellant's home, where he was admitted into the house by appellant's visiting mother-in-law, Ms. Lilly Wise. When the officer asked for the appellant, Ms. Wise went to appellant's bedroom to retrieve him; the officer followed her. In the bedroom, the officer questioned appellant, administered field-sobriety tests, and arrested appellant for the offense of driving

while intoxicated (DWI), first offense, pursuant to Ark. Code Ann. § 5-65-103 (Repl. 1997).

In the trial court, appellant filed a motion to suppress the evidence based on the officer's alleged unlawful arrest. A hearing was held on the motion, and the motion was denied. Appellant then entered a conditional plea of guilty to DWI, first offense, and was sentenced to serve one day in the county jail and pay a fine of $350.00. Appellant now appeals from the trial court's denial of his motion to suppress pursuant to Arkansas Rules of Criminal Procedure, Rule 24.3(b). Appellant asserts the following on appeal:

1)  The police had no authority to enter appellant's home to make a warrantless arrest for a minor offense; and

2)  No valid consent was given to allow police to enter appellant's home to make a warrantless arrest.

We agree with the appellant; and, for the following reasons, we reverse the trial court and dismiss the case.

## I.   Seriousness of offense and exigent circumstances

A warrantless entry into a private home is presumptively unreasonable. *Welsh v. Wisconsin*, 466 U.S. 740 (1984); *Butler v. State*, 309 Ark. 211, 829 S.W.2d 412 (1992). The burden is on the State to prove the warrantless activity was reasonable. *Id.*; *Wofford v. State*, 330 Ark. 8, 952 S.W.2d 646 (1997). On appeal, this Court will make an independent determination based on the totality of the circumstances to ascertain whether the State has met its burden. *Williams v. State*, 327 Ark. 213, 939 S.W.2d 264 (1997).

The U.S. Supreme Court held in *Payton v. New York*, 445 U.S. 573 (1980), that a warrantless felony arrest in the home is prohibited under the Fourth Amendment, absent probable cause and exigent circumstances. The Court emphasized:

> In terms that apply equally to seizures of property and to seizures of persons, *the Fourth Amendment has drawn a firm line at the*

*entrance to the house.* Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant.

*Id.* at 590 (emphasis added).

In the case at bar, the officer acted solely on the information of a citizen who allegedly saw the appellant driving his vehicle erratically and who followed appellant home. The officer entered appellant's home without a warrant, based on a private citizen's suspicions that appellant had committed a misdemeanor traffic offense, in order to search for appellant, and eventually arrest him. In *Welsh v. Wisconsin, supra*, the "firm line" of the Fourth Amendment drawn by *Payton* was emphasized and underscored in its application to warrantless arrests in the home for non-felony minor offenses. The facts in *Welsh* are very similar to the case at bar.

In *Welsh*, a witness observed a car which was being driven erratically and which swerved off the road. The driver got out of the car and walked away. When the police arrived, the witness told them what he had seen, and the police checked the car's registration. Without obtaining a warrant, the police went to the home of the registered owner of the car, gained entry, and found the owner lying in bed. The car owner was then arrested for operating a motor vehicle while under the influence of an intoxicant and taken to the police station where he refused to take a breathalyzer test. To avoid license revocation, the car owner requested a hearing on his refusal to take the test.

The trial court concluded that the arrest was lawful and that the owner's refusal to take the test was unreasonable; the court then suspended his license. The suspension order was vacated by the Wisconsin Court of Appeals, which concluded that although the State had demonstrated probable cause to arrest, it had not established the existence of exigent circumstances. The Supreme Court of Wisconsin reversed the Court of Appeals, holding that there were exigent circumstances in the case — the need for hot pursuit of a suspect, the need to prevent physical harm to the offender and the public, and the need to prevent destruction of

evidence. On certiorari, the United States Supreme Court vacated and remanded, holding that absent exigent circumstances, a warrantless nighttime entry into the home of an individual to arrest him for a civil, nonjailable traffic offense is prohibited by the special protection afforded the individual in his home by the Fourth Amendment.

While the U.S. Supreme Court did hold, in *Welsh*, that for purposes of a warrantless home arrest, an important factor to be considered when determining whether any exigency exists is the gravity of the underlying offense for which the arrest is being made, it continued that application of the exigent–circumstances exception to the warrant requirement of the Fourth Amendment in the context of a home entry should rarely be sanctioned when there is probable cause to believe that only a minor offense, such as the one involved in *Welsh*, has been committed. We adopted this holding in *Butler v. State, supra.*

The Supreme Court in *Welsh* held further as follows: that a warrantless home arrest for a civil, nonjailable traffic offense is not justified by the hot-pursuit doctrine where there was no immediate or continuous pursuit of the offender from the scene of a crime; that a warrantless home arrest for a civil, nonjailable traffic offense is not justified as a threat to public safety, which is an exigent circumstance exception to the warrant requirement of the Fourth Amendment, where the offender had already arrived home and had abandoned his car at the scene of the accident; and, that a warrantless home arrest for driving while intoxicated is not justified by the need to preserve evidence of the offender's blood-alcohol level, the imminent destruction of evidence being an exigent circumstance exception to the warrant requirement of the Fourth Amendment, where a State has chosen to classify the first offense for driving while intoxicated as a noncriminal, civil-forfeiture offense for which no imprisonment is possible. Given the State's interest in precipitating an arrest, the Court continued, a warrantless home arrest cannot be upheld simply because evidence of the offender's blood-alcohol level might have dissipated while the police obtained a warrant.

In the case at bar, the State contends that the gravity of the offense of driving while intoxicated in Arkansas indicates that the State has a strong interest in arresting persons suspected of having committed it. *See Byrd v. State*, 317 Ark. 609, 879 S.W.2d 434 (1994) (characterizing DWI as serious); *see also* Act 1983, No. 549, § 19 (providing that DWI is "a serious and immediate threat to the safety of all citizens of this State[ ]"). The State further contends that because of the State's strong interest in precipitating an arrest in DWI cases, the need for preservation of evidence, such as blood-alcohol content, is great and, therefore, created an exigent circumstance in the instant case.

First-offense driving while intoxicated is a criminal offense in Arkansas, with penalties including imprisonment from one day to one year (although the court may order public service in lieu of jail), as well as fines from $150 to $1,000. *See* Ark. Code Ann. §§ 5-65-103; 5-65-111(a) (Repl. 1997)(imprisonment); 5-65-112(1) (Repl. 1997)(fines). In addition, a first-offender's driver's license must be suspended for 120 days, and the offender must attend an alcohol-education program. *See* Ark. Code Ann. §§ 5-65-104(a)(4)(A)(I) (Repl. 1997)(suspension); 5-65-115(a) (Repl. 1997)(program). However, DWI, first offense, is classified as a misdemeanor in Arkansas.

It is true that this Court and the legislature of this State have recognized driving while intoxicated as a serious offense. The question then becomes whether, in the statutory scheme of criminal offenses, the seriousness of DWI, first offense, rises to the level that would warrant violation of the Fourth Amendment's special protection afforded to the individual in his home, as articulated in *Payton, supra,* and *Welsh.* We hold that it does not.

In *Welsh*, the Supreme Court stated:

> Our hesitation in finding exigent circumstances, particularly when warrantless arrests in the home are at issue, is especially appropriate when the underlying offense for which there is probable cause to arrest is *relatively* minor. Before agents of the government may invade the sanctity of the home, the burden is on

> the government to demonstrate exigent circumstances that over-come the presumption of unreasonableness that attaches to all warrantless home entries.
>
> When the government's interest is only to arrest for a minor offense, that presumption of unreasonableness is difficult to rebut, and the government usually should be allowed to make such arrests only with a warrant issued upon probable cause by a neutral and detached magistrate.

*Welsh, supra,* at 750 (emphasis added). Although the Supreme Court has declined to consider the scope of any exception for exigent circumstances that might justify warrantless home arrests, thereby leaving to the lower courts the initial application of the exigent-circumstances exception, prior decisions of that Court have emphasized that exceptions to the warrant requirement are "few in number and carefully delineated," and that the police bear a heavy burden. *See, Welsh, supra,* at 749; *Payton, supra,* at 583; *United States v. United States District Court,* 407 U.S. 297, 318 (1972).

There is no doubt that driving while intoxicated is serious. However, when compared to other criminal offenses involving violence, or threats of violence which endanger life or security, for instance, DWI, first offense, becomes relatively minor in the Fourth Amendment analysis. Although DWI is a serious offense, the Arkansas legislature has chosen to classify DWI, first offense, as a misdemeanor. The offense of DWI does not become a felony in this State until the fourth offense has been committed.

Further, although our statute provides for up to one year imprisonment for violation of same, the penalties imposed for DWI, first offense, in this State are similar to those attaching to the nonjailable traffic offense involved in *Welsh, supra,* and the misde-meanor penalties discussed in the Eighth Circuit case of *Patzner v. Burkett,* 779 F.2d 1363 (8th Cir. 1985). The Eighth Circuit applied the holding in *Welsh* to *Patzner,* which was also a driving-while-intoxicated case. The facts were very similar to those in *Welsh,* and as in *Welsh,* the *Patzner* court came to the same con-

clusion: the government's interests did not override the protections of the Fourth Amendment and the firm line drawn by *Payton.*

The *Patzner* court reached this conclusion even though the State (North Dakota) classified the offense as a criminal one and the penalty was slightly greater than that in *Welsh.* There, the court found that the "minor difference in penalty is not sufficient to support a result different from that reached in *Welsh.*" *Patzner,* 779 F.2d at 1368-69. In comparison, the South Dakota Supreme Court reached the same result for a first offense of driving while intoxicated in the case of *State v. Flegel,* 485 N.W.2d 210 (1992), where the penalty provided for up to one year imprisonment, just as Arkansas does, noting that "like the Eighth Circuit in *Patzner,* we hold the minor difference in penalty is not sufficient to support a result different from that reached in *Welsh.*" *Id.* at 215.

■ Therefore, because the penalties imposed for DWI, first offense, in this State are similar to those attaching to the nonjailable traffic offense involved in *Welsh* and the misdemeanor penalties discussed in *Patzner,* we, too, hold that the minor difference in penalty is not sufficient to support a result different from that reached in *Welsh.*

■ Nonetheless, with regard to the exigent–circumstance argument, the risk of destruction of evidence *is* an established exigent circumstance that can justify a warrantless entry. *See Humphrey v. State,* 327 Ark. 753, 940 S.W.2d 860 (1997). The State contends that because the appellant's blood–alcohol content decreases with the passage of time, it is therefore equivalent to "destruction of evidence," and that determining his blood–alcohol content is, then, an "exigent circumstance" that justifies the warrantless entry into appellant's home.

■ In the instant case, we hold that, while neither party disputes the existence of probable cause to effect the arrest, sufficient exigent circumstances did not exist to overcome the strong presumption that warrantless home arrests are unreasonable. The police received a report from a lone witness that a pickup truck

driven by appellant was seen being driven erratically. It was further reported that appellant had driven to a residence, had gone inside, and was in bed. As in *Welsh*, there was no question of "hot pursuit" on the part of the police, nor was there any question that appellant was a threat to the safety of the public, since he had already arrived home and was no longer in his car. Furthermore, considering the *Payton*, *Welsh*, and *Patzner* analyses, and the nature of the offense in the statutory scheme of criminal offenses, it must be determined that a warrantless home arrest cannot be upheld simply because evidence of the offender's blood-alcohol level might have dissipated while the police obtained a warrant.

### II.  Consent

The State contends that even if exigent circumstances did not justify the officer's warrantless entry into appellant's house, the evidence obtained by the officer after the entry is not subject to suppression because the entry was consensual. As a general matter, a warrantless entry made with consent does not violate the Fourth Amendment. *See, e.g., Illinois v. Rodriguez*, 497 U.S. 177 (1990). However, consent to a warrantless search of one's home must be given freely and voluntarily. *Humphrey v. State, supra*; *Guzman v. State*, 283 Ark. 112, 672 S.W.2d 656 (1984). The State has a heavy burden to prove by clear and positive testimony that consent was freely and voluntarily given. *Scroggins v. State*, 268 Ark. 261, 595 S.W.2d 219 (1980); *Humphrey, supra*. On appeal, this Court makes an independent determination based on the totality of the circumstances to determine if the State has met its burden. *Id.*

In this case, the officer was given entry into appellant's home by appellant's visiting seventy-seven-year-old mother-in-law, Lilly Wise. Appellant claims there was no valid consent for the officer to enter the house because Ms. Wise had no authority to consent to the officer's entry; further, appellant contends that if any consent is found to have existed on Ms. Wise's part, it was limited to the initial invitation to the living room, which is just inside the door, and not to appellant's bedroom.

■ We have suggested that so long as a searching police officer reasonably believes that a person giving consent had authority to do so, the consent is valid, notwithstanding a later determination that the consentor had no such authority. *Grant v. State*, 267 Ark. 50, 589 S.W.2d 11 (1979). That being the case, the question then turns to the scope of that consent.

Ms. Wise testified that she asked the officer to step inside the house because the family dog was making a disturbance, and for no other reason. She stated that she never asked or verbally consented to the officer coming any farther into the house, and specifically, not down the hall and into appellant's bedroom. This testimony was undisputed. Further, the officer's testimony made it clear that while his initial entry into the house was in response to Ms. Wise's initial invitation to step inside, that entry was distinct and separate from his decision to follow her out of the living room, down the hall, and into appellant's bedroom.

The officer never asserted that he perceived the initial invitation as anything more than entry inside the front door or that he relied on that invitation in any way as a basis for going into the interior of appellant's home. Neither did he ever assert that Ms. Wise verbally indicated to him in any way that he should follow her. In fact, when specifically asked why he followed her down the hall, he replied:

> OFFICER WHITE: Well, I was looking for a subject and when she was going to go get somebody, I just kind of assumed that I was going, too, for my safety and everything, that I was going to see where this person was.

The officer's assumptions about why he would follow Ms. Wise to appellant's bedroom were unrelated to any matters of consent on the part of Ms. Wise. The officer further stated that he could not recall anyone consenting or asking him to follow Ms. Wise back to appellant's bedroom.

■ ■ It is well recognized that a limited invitation, such as the one Ms. Wise gave to step inside the house, is just that and does not authorize police to go beyond the scope of that consent.

Arkansas Rules of Criminal Procedure, Rule 11.3 states that "a search based on consent shall not exceed, in duration or physical scope, the limits of the consent given." Further, a search occurs whenever something not previously in plain view becomes exposed to an investigating officer. *Arizona v. Hicks*, 480 U.S. 321; *U.S. v. Gonzalez*, 71 F.3d 819 (11th Cir. 1996). Any initial consent granted by Ms. Wise to the police officer was limited in scope to the officer's entry into the front door. Any attempt at further entry into appellant's home in reliance on that initial consent was in excess of that consent and in violation of Rule 11.3.

■ As the further entry of the officer into appellant's home and into his bedroom was not the result of the initial invitation on the part of Ms. Wise, nor of any express verbal statements, as discussed above, the State must, therefore, rely on some form of implied consent for that further entry. Consent, however, cannot be presumed from proof that a person merely acquiesced to police authority nor from an absence of proof that a person resisted police authority. *Bumper v. North Carolina*, 391 U.S. 543 (1968); *Patzner v. Burkett, supra; Rodriguez v. State*, 262 Ark. 659, 559 S.W.2d 925 (1978).

In the *Patzner* case, *supra*, the Eighth Circuit declined to find consent when the officer in that case acted as did the officer in the case at bar. The officer had gone to Patzner's home to investigate a possible DWI charge. The officer found Lester Naatus, a friend who was staying with Patzner, in the front yard. The officer asked Naatus if Patzner was home and Naatus told her he was and went to get Patzner. After a time, the officer went to the open front door and spoke to Naatus through the screen, asking him if she could speak with Patzner. Naatus replied that Patzner was in the kitchen. The officer then entered the house, walked into the kitchen and told Patzner he was under arrest. The Court, relying on *Bumper, supra*, held that no consent had been given. It held that Naatus' agreement to go get Patzner was not sufficient to show consent and no such inference could reasonably be drawn from Naatus' response. The Court articulated:

> At most, his cooperation, such as it was, only extended to acting as a messenger for [the officer] in response to her express requests. Although Naatus apparently acquiesced to her demands, there is no showing that he cooperated further by asking her in or otherwise acted on his own initiative.

*Patzner*, 779 F.2d at 1369 (emphasis added).

The question of "implied consent" at issue in *Patzner*, was more closely examined recently in *U.S. v. Gonzalez, supra.* In *Gonzalez*, the officer approached an individual outside her home and asked if she would consent to a search of her home. Following a conversation with her daughter, she told the officer she wanted to go inside and get a drink of water. The officer then told her he "wanted to go in" with her, and when she did not bar him from going in, he followed her inside. The Eleventh Circuit held that there was no consent to enter:

> We have previously noted our hesitancy to find implied consent (i.e. consent by silence) in the Fourth Amendment context, and we agree with our colleagues in the Ninth Circuit that *whatever relevance the implied consent doctrine may have in other contexts, it is inappropriate to 'sanction entry into the home based upon inferred consent.'* [Emphasis added.]

*Gonzalez* then quoted from *U.S. v. Shaibu*, 920 F.2d 1423 (9th Cir. 1990), to which it had referred above:

> The government may not show consent to enter from the defendant's failure to object to the entry. To do so would be to justify entry by consent and consent by entry. 'This will not do.' *Johnson v. United States*, 333 U.S. at 17. *We must not shift the burden from the government — to show 'unequivocal and specific' consent — to the defendant, who would have to prove unequivocal and specific objection to a police entry, or be found to have given implied consent.*

*Gonzalez*, 71 F.3d at 830 (emphasis added).

The State cites *United States v. Mejia*, 953 F.2d 461 (9th Cir. 1991), in support of its position that there was "implied consent." However, the facts of *Mejia* are distinguishable from the instant case. For example, *Mejia* involved a nighttime search, not a daytime search. Moreover, the charge in *Mejia* was a felony, conspiracy to distribute cocaine, not a misdemeanor, DWI. Additionally, a decision from the Ninth Circuit is not binding upon this court, particularly when our own Rules of Criminal Procedure expressly provide that "a search based on consent shall not exceed, in duration or physical scope, the limits of the consent given." Ark. R. Crim. P. 11.3.

■ Given the totality of the circumstances involved in the case at bar, we hold that, as in *Patzner*, Ms. Wise was acting as no more than a messenger for the officer. The officer was not asked to follow her, neither could he nor did he, according to his own testimony, assume she was impliedly asking him to follow.

■ The State contends that because appellant's wife was in the living room when the officer entered and she also offered no objection to the officer following Ms. Wise to appellant's bedroom, implied consent was further given by appellant's wife. The State would seem to require Ms. Wise or appellant's wife to object to the officer following Ms. Wise or somehow resist his further entry into her home, in order to indicate that he was to go no further. This is precisely the result that *Patzner*, *Gonzalez*, and *Shaibu* have held to be prohibited by the Fourth Amendment. To do so would shift the burden from the government, to show consent, to the defendant, to prove objection to same. This would fly in the face of the Fourth Amendment and is offensive to this Court. We, therefore, reject that argument.

■ For all of the above-stated reasons, we hold that the State has failed to prove that the warrantless activity at issue in this case was reasonable based upon the totality of the circumstances, and hereby reverse and dismiss the case.

Reversed and dismissed.

## SUPPLEMENTAL OPINION ON DENIAL
## OF REHEARING

999 S.W.2d 183

September 16, 1999

*Doug Norwood*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Vada Berger*, Ass't Att'y Gen., for appellee.

WH. "Dub" Arnold, Chief Justice. The State of Arkansas petitions this court for rehearing for the sole purpose of changing the disposition of the case from reversed and dismissed to reversed and remanded. We conclude that the State is correct in this regard and that the proper disposition of the case when evidence has been excluded on appeal due to trial error is a reversal and remand for the possibility of a new trial. *See Nard v. State*, 304 Ark. 159, 163-A, 801 S.W.2d 634, 637 (1991) (supplemental opinion). Accordingly, we reverse and remand this case.