Johnny W. MANN *v.* STATE of Arkansas

CR 03-1460 161 S.W.3d 826

Supreme Court of Arkansas
Opinion delivered April 29, 2004

162

*G.B. "Bing" Colvin, III,* for appellant.

*Mike Beebe,* Att'y Gen., by: *Laura Shue,* Ass't Att'y Gen., for appellee.

D<small>ONALD</small> L. C<small>ORBIN</small>, Justice. ■ Appellant Johnny W. Mann was convicted in the Ashley County Circuit Court of possession of methamphetamine with intent to manufacture or deliver and possession of drug paraphernalia; he was sentenced as a habitual offender to twenty years' imprisonment. On appeal to the Arkansas Court of Appeals, Appellant argued that the trial court erred in denying his motion to suppress and in allowing the State to refer to his criminal history during the trial. The court of appeals reversed on the suppression issue and remanded the matter to the trial court. *See Mann v. State,* 84 Ark. App. 225, 137 S.W.3d 411 (2003). We granted the State's petition for review of the court of appeals' decision, pursuant to Ark. Sup. Ct. R. 2-4. When we grant review following a decision by the court of appeals, we review the case as though it had been originally filed with this court. *See Jones v. State,* 355 Ark. 630, 144 S.W.3d 254 (2004); *Zangerl v. State,* 352 Ark. 278, 100 S.W.3d 695 (2003). We conclude that the trial court erred in denying the motion to suppress, and we reverse.

The record reflects that on or about May 20, 2001, Mitchell Webb, a United States postal inspector in Little Rock, received information from a postal inspector in California of a suspicious package addressed to Clark Nuss, 424 Ashley 81 West, Hamburg, Arkansas. The package had a return address of Crescent City, California. Webb instructed the California office to forward the package to him, via sealed mail. Once Webb received the package, he ran a drug-detection canine by the package, and the dog alerted on it. Another postal inspector then obtained a federal search warrant for the package, which was then opened and discovered to contain approximately eighteen grams of methamphetamine. Webb contacted officers of the Arkansas State Police to see if they

were interested in investigating the matter. They indicated that they were, so Webb re-wrapped the package and transported it to Hamburg the following day.

Officers from the state police discovered that Appellant lived at 424 Ashley 81 West in Hamburg. They also ran criminal histories on Appellant and Clark Nuss and discovered that both men had previously lived in Crescent City, California. Officers then decided to make a controlled delivery of the package, with Inspector Webb posing as a rural route carrier in Hamburg. Prior to the actual delivery, Appellant approached his regular mail carrier and asked if there were any packages for him. The mail carrier told Appellant that the mail route for that day was being split up and that another carrier may possibly have his mail.

At the time of the controlled delivery, officers conducted surveillance of the residence at 424 Ashley 81 West, Hamburg. They watched it from the ground, as well as from the air in a state police helicopter. The residence was a mobile home with a screen-in porch area on the front. There was some construction going on at the front of the residence, in an apparent attempt to convert the mobile home into a permanent structure. There was a screen door on the porch and a metal door on the trailer itself.

·On the date of the controlled delivery, May 21, 2001, Inspector Webb drove his postal vehicle into Appellant's driveway and honked his horn. Appellant came out and approached Webb. Webb told him that he had two packages that were too big to fit into the mailbox. Webb then asked Appellant if the packages belonged there, and Appellant said that they did. The police officers remained in their surveillance positions for five to six minutes, to give Appellant time to open up the packages. They then approached the residence, entered the screen-in porch, and announced their presence. The metal door to the trailer was open. At some point, either while they were inside the porch area or in the doorway of the trailer, one of the officers heard someone running down the hallway, and he alerted the others. At least two of the officers pursued the runner toward the bathroom, where they discovered Appellant, who was fully clothed, sitting on the commode, which had just been flushed. Appellant was then taken into custody, and officers subsequently obtained his consent to search the residence. The officers then recovered the methamphetamine from the drain of the commode.

Appellant was charged with possession of methamphetamine with intent to manufacture or deliver, Class Y felony; possession of

drug paraphernalia, Class C felony; and felon in possession of a firearm, Class D felony. Appellant filed a motion to suppress the evidence found during the search of his residence, on the ground that the warrantless entry violated his Fourth Amendment rights. Following a hearing, the trial court denied the motion to suppress, finding that there were exigent circumstances to justify the warrantless entry. Particularly, the trial court found that when the police entered the screened-in porch and announced that they were police, they heard someone running in the residence. According to the trial court: "That led to the reasonable conclusion that Mr. Mann, who they knew was in possession of these drugs at this time, was trying to do something to dispossess himself of them or destroy them."

Appellant was subsequently tried by a jury and convicted of all but the firearms charge. He was sentenced as a habitual offender to twenty years' imprisonment. Thereafter, Appellant appealed to the court of appeals, which found merit to Appellant's suppression argument and reversed his convictions. See Mann, 84 Ark. App. 225, 137 S.W.3d 411. In doing so, the court of appeals concluded that police officers themselves had created the exigent circumstances, and that under the Eighth Circuit's holding in United States v. Duchi, 906 F.2d 1278 (8th Cir. 1990), those exigent circumstances could not be relied upon to justify the warrantless entry.

In its petition for review, the State asserts that the court of appeals was wrong to rely on Duchi, 906 F.2d 1278. The State also takes issue with the court of appeals' conclusion that the investigative strategy of the officers created a sense of urgency. Instead, the State urges that the dissent was correct in concluding that the exigent circumstances were created by Appellant when he chose to run down the hallway to the bathroom and flush the evidence down the commode. The State asserts that the court of appeals' holding is tantamount to a requirement that the police must seek an anticipatory search warrant in every case in which an illegal substance is found in a parcel of mail.

In reviewing the trial court's denial of a motion to suppress evidence, we conduct a de novo review based on the totality of the circumstances, reviewing findings of historical fact for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by the trial court and proper deference to the trial court's findings. See Romes v. State, 356 Ark. 26, 144 S.W.3d 750 (2004); Davis v. State, 351 Ark. 406, 94 S.W.3d 892 (2003). After

reviewing the record in this case, as well as relevant case law, we conclude that the court of appeals was correct in holding that the warrantless entry into Appellant's residence violated the Fourth Amendment.

We begin our analysis by acknowledging the boilerplate principle that a warrantless entry into a private residence is presumptively unreasonable under the Fourth Amendment. *See Welsh v. Wisconsin*, 466 U.S. 740 (1984); *Love v. State*, 355 Ark. 334, 138 S.W.3d 676 (2003); *Latta v. State*, 350 Ark. 488, 88 S.W.3d 833 (2002); *Norris v. State*, 338 Ark. 397, 993 S.W.2d 918 (1999). An exception to the warrant requirement is where, at the time of entry, there exists probable cause and exigent circumstances. *See Humphrey v. State*, 327 Ark. 753, 940 S.W.2d 860 (1997); *Butler v. State*, 309 Ark. 211, 829 S.W.2d 412, *cert. denied*, 506 U.S. 998 (1992); *Mitchell v. State*, 294 Ark. 264, 742 S.W.2d 895 (1988). "Exigent circumstances are those requiring immediate aid or action, and, while there is no definite list of what constitutes exigent circumstances, several established examples include the risk of removal or destruction of evidence, danger to the lives of police officers or others, and the hot pursuit of a suspect." *Humphrey*, 327 Ark. at 766, 940 S.W.2d at 867 (citing *Butler*, 309 Ark. 211, 829 S.W.2d 412). The burden is on the State to prove that the warrantless activity was reasonable. *Latta*, 350 Ark. 488, 88 S.W.3d 833; *Norris*, 338 Ark. 397, 993 S.W.2d 918. As will be demonstrated below, the State did not meet its burden in this case.

The testimony of the officers during the suppression hearing was inconclusive as to when the exigent circumstances arose. The record reflects that six officers testified at the suppression hearing; however, only two officers, Dennis Roberts, of the Arkansas State Police, and Deputy Jim Culp, of the Ashley County Sheriff's Department, testified that they entered Appellant's residence before he was taken into custody. Roberts initially testified that he was inside the residence when he heard someone running down the hallway. He explained:

> We went into the house, and I was one of the first into the house. I heard running down the wooden floor. I announced, "State Police." Continued to hear the running. We pursued the running down the hallway and found Mr. Mann inside of the bathroom.

Roberts also stated:

> *[U]pon entry of the house,* just as I was standing, or *just as I was hearing the running down the hallway,* I saw our package that had been torn open sitting on a kitchen bar right as you walked into the doorway. [Emphasis added.]

On cross-examination, Roberts candidly admitted that he could not be certain where he was when he heard someone running down the hallway. He explained:

> Immediately, immediately after I heard the running, *and I can't tell you where I was, whether I was in the screened-in area or the doorway* where I could see the package, I, when I heard the running, I stated, "state police." [Emphasis added.]

Culp testified that he entered the house with Roberts: "As we entered the porch, we called out, 'Police,' *and went on in the house* and found Johnny Mann sitting on the commode, which had just been flushed, with his pants still up." (Emphasis added.) When the prosecutor asked Culp whether he recalled hearing any other noises at the time that they announced "Police," Culp replied, "Not at that time, I don't."

██ ██ During the suppression hearing, the State maintained that the officers' warrantless entry into Appellant's home was based on the exigent circumstance that they feared that evidence was about to be destroyed. This fear was based on the sound of someone running down the hallway. The record reveals that Roberts was apparently the only officer to actually have heard this noise. His testimony, however, is admittedly uncertain as to when he heard the running, *i.e.,* before or after he had entered the home. Our case law requires us to examine only those exigent circumstances that existed at the time of the entry. *See Humphrey,* 327 Ark. 753, 940 S.W.2d 860; *Butler,* 309 Ark. 211, 829 S.W.2d 412; *Mitchell,* 294 Ark. 264, 742 S.W.2d 895. Obviously, a warrantless entry that occurs before the exigent circumstance exists violates the Fourth Amendment. It was the State's burden to present evidence proving that the warrantless entry was reasonable under the Fourth Amendment. Based on the record before us, we conclude that the State failed to meet its burden and that the trial court erred in concluding that the warrantless entry was reasonable.

██ Furthermore, regardless of when the exigent circumstance arose, we agree with the court of appeals that this particular exigent circumstance was effectively created by the police's chosen

strategy in this case. At a minimum, the officers reasonably could have foreseen that their decision to approach Appellant's residence without a warrant immediately after completing a controlled delivery of methamphetamine would likely result in an attempt to destroy the evidence.

■ The Eighth Circuit Court of Appeals has recognized two factors to be considered in determining whether a warrantless entry is justified by the exigent circumstance that evidence is about to be destroyed: (1) whether the police had the opportunity to seek a warrant, and (2) whether the danger of destruction of the evidence was reasonably foreseeable. The first factor, the opportunity to seek a warrant, is relevant because the entire justification for the exigent-circumstances exception to the warrant requirement is the "urgency of the situation." *Duchi*, 906 F.2d at 1282. "The warrant requirement is suspended when — in the press of circumstances beyond a police officer's control — lives are threatened, a suspect's escape looms, or evidence is about to be destroyed." *Id.* (citing *United States v. Clement*, 854 F.2d 1116 (8th Cir. 1988)). Clearly, if officers have the opportunity to seek a warrant, the situation is not one of urgency.

■ Here, there is no doubt that the officers had the opportunity to seek and secure a warrant to search Appellant's residence. The officers had probable cause to believe that Appellant was committing the crime of possession of a controlled substance. They had already determined that the package contained a controlled substance, namely methamphetamine, and they had witnessed Appellant accept the package after telling Postal Inspector Webb that the package belonged at his residence. Moreover, they knew that Appellant and the addressee, Clark Nuss, were previously residents of Crescent City, California, where the package originated. The police had two viable options in this case. First, they could have continued their surveillance of Appellant's residence while one or more of them attempted to secure a search warrant. If Appellant would have left the residence with the package during the time that the police were attempting to secure the warrant, they would have had probable cause to stop Appellant and arrest him at that time. *See Duchi*, 906 F.2d 1278.

■ The second option available to police was to obtain an anticipatory search warrant prior to the time that the controlled delivery was executed. An anticipatory warrant is "one that is

issued before the item to be seized has arrived at the place to be searched." *United States v. Tagbering*, 985 F.2d 946, 949 (8th Cir. 1993). An anticipatory search warrant will generally be upheld "if independent evidence shows the delivery of contraband will or is likely to occur and the warrant is conditioned on that delivery." *United States v. Bieri*, 21 F.3d 811, 814 (8th Cir.), *cert. denied*, 513 U.S. 878 (1994) (citing *Tagbering*, 985 F.2d 946 (citing *United States v. Garcia*, 882 F.2d 699 (2nd Cir.), *cert. denied*, 493 U.S. 943 (1989))). This court has previously recognized the validity of anticipatory search warrants in *Sims v. State*, 333 Ark. 405, 969 S.W.2d 657 (1998), *cert. denied*, 525 U.S. 1073 (1999).

█ In the present case, the police could have obtained an anticipatory search warrant conditioned upon the delivery of the controlled substance to Appellant's residence. They knew that the package contained a controlled substance and that the package identified a real person at an accurate address. As such, this situation is unlike that presented in *United States v. Johnson*, 904 F.2d 443 (8th Cir. 1990). There, a postal inspector in Los Angeles had forwarded a package that he suspected of containing a controlled substance to a postal inspector in St. Louis. A drug-detection canine alerted on the package, a federal search warrant was obtained, and the package was determined to contain a controlled substance. However, unlike the present case, the package did not identify a real person nor a real address. The package was addressed to "Albert Nixson, 5322 Ingelwood, Apartment E, Normandy, Lucas and Hunt Village, 63121." *Id.* at 446 n.3. The Eighth Circuit took great pains to state that the officers attempting the controlled delivery in that case did not have sufficient information with which to obtain an anticipatory search warrant. "If the address on the package had identified a real person at an accurate address, Johnson would have at least a colorable claim." *Id.* at 445. Because the address and addressee did not exist, the police had to settle on an address that was the most similar to the one on the mailing label. Even then, the police had to make four unsuccessful attempts to deliver the package before it was accepted. Thus, because the investigation in *Johnson* had no focus at the time of the controlled delivery, police could not have obtained an anticipatory search warrant. *See Duchi*, 906 F.2d 1278.

 Here, in contrast to the facts in *Johnson*, the package containing the controlled substance identified a real person, Clark Nuss, and an accurate address, which belonged to Appellant. Prior to the controlled delivery, the officers had already determined that Appellant lived at the residence and that both he and Nuss had previously resided in Crescent City, California, where the package originated. Furthermore, the officers were aware that on the same date, prior to the delivery, Appellant had approached his regular mail carrier and asked if there were any packages for him. Based on this information, coupled with the knowledge that the package contained methamphetamine, the police could have obtained an anticipatory search warrant for Appellant's residence. As such, the first factor adopted by the Eighth Circuit, the opportunity to obtain a search warrant, weighs in favor of Appellant.

 Likewise, the factor of foreseeability also weighs in favor of Appellant. On this factor, the Eighth Circuit has explained that the focus of the inquiry is not whether the police's actions created the exigent circumstances; rather, it is the propriety and reasonableness of the police's chosen tactics and strategy. The court explained:

> We have recently held, adopting the view consistently taken by our sister circuits, that the situations of urgency protected by this exception cannot be created by police officers.
>
> This general holding will not dispose of this case or, in fact, of many cases. For in some sense the police always create the exigent circumstances that justify warrantless entries and arrests. Their discovery of the criminal causes him to flee; their discovery of the contraband causes the criminal's attempt to destroy or divert the evidence. *For the claim of exigent circumstances to be adequately evaluated, the better question to ask is: how did those urgent circumstances come about? This antecedent inquiry — into the reasonableness and propriety of the investigative tactics that generated the exigency — seems to be what courts have in fact been doing in these kinds of cases.*
>
> We adopt this antecedent inquiry into the appropriateness of investigative tactics as the principled way to evaluate whether the officers created the exigent situation. There is no question that the deliberate creation of urgent circumstances is unacceptable. But bad faith is not required to run afoul of the standard we adopt and apply today.

*Duchi*, 906 F.2d at 1284 (citations omitted) (emphasis added).

Applying that test to the facts present in *Duchi*, the Eighth Circuit held that the police's chosen strategy, which was to remove some of the controlled substance from the package prior to the controlled delivery and replace it with a book of the same weight, essentially created the exigent circumstance used to justify the warrantless entry. The court held: "The heightened danger of destruction upon discovery was, however, reasonably foreseeable; it was, in fact, the replacement strategy's probable result. Since that danger was created by the officers' investigative strategy, it cannot justify their warrantless entry." *Id.* at 1285. *See also United States v. Johnson*, 12 F.3d 760 (8th Cir. 1993), *cert. denied*, 512 U.S. 1211 (1994).

 From the holding in *Duchi*, we may glean the following test for determining whether the exigent circumstances are of the police's own creation: Whether, regardless of good faith, it was reasonably foreseeable that the investigative tactics employed by the police would create the exigent circumstances relied upon to justify a warrantless entry. Applying that test to the facts of this case, we conclude that it was reasonably foreseeable that the police's chosen strategy of approaching Appellant's residence and announcing their presence, only minutes after a controlled delivery had occurred, would create a situation in which Appellant would attempt to destroy the evidence.

The facts of this case are similar to those in *United States v. Munoz-Guerra*, 788 F.2d 295 (5th Cir. 1986). There, the court held that the exigent circumstances relied on to justify a warrantless entry of a condominium were the result of the police's decision to approach the residence and announce their presence. The court explained:

> Our past opinions have consistently emphasized that without reason to believe that a criminal suspect was aware of police surveillance, the mere presence of firearms or destructible, incriminating evidence does not create exigent circumstances. In the instant case, it was possible to secure the condominium covertly from the outside. There was no basis, on these facts, for believing that resort to a magistrate would have created risks of a greater magnitude than those which are present in any case where the police have probable cause but delay entry pending receipt of a warrant. *Had the police's necessary efforts to secure the premises been visible to the inhabitants or had*

> *there been reason to believe that someone within the condominium was in need of immediate [aid], the government's position would have merit.* The government's argument that swift and immediate action may have minimized risks to human life and physical evidence, however, misses the mark. Our fourth amendment jurisprudence contemplates that protection of individual rights of privacy will be achieved at some cost to society's interest in public safety; and, in the ordinary case the risk that a criminal suspect will become aware of covert surveillance is deemed insignificant in contrast to the more substantial benefits we all derive from the procedural safeguards of judicial process.

*Id.* at 298-99 (citations and footnote omitted) (emphasis added).

Similarly, the Seventh Circuit Court of Appeals has held that when exigent circumstances are used to justify a warrantless entry into a home, it is appropriate to review the police's conduct and tactics. *See United States v. Rosselli*, 506 F.2d 627 (7th Cir. 1974). Indeed, the *Rosselli* court specifically held that "it is appropriate to appraise the agents' conduct *during the entire period after they had a right to obtain a warrant and not merely from the moment when they knocked at the front door.*" *Id.* at 630 (footnote omitted) (emphasis added). There, police officers had probable cause to believe that controlled substances were being held in the suspect's home, and they approached the suspect's door, knocked, and identified themselves as police officers. Immediately thereafter, they heard a voice inside say "Don't open the door for anybody," and then they heard footsteps running. *Id.* at 628. Fearing that drug evidence was about to be destroyed, the officers kicked down the door and entered. The Seventh Circuit, like the Fifth Circuit in *Munoz-Guerra,* held that although there was no evidence that the police had contrived the exigent circumstances, the exigency was foreseeable. The Seventh Circuit noted that if it were to uphold the police's actions even though the exigent circumstances were foreseeable, "this type of situation may reoccur repeatedly and might lend itself to too easy a by-pass of the constitutional requirement that probable cause should generally be assessed by a neutral and detached magistrate before the citizen's privacy is invaded." *Id* at 630.

Professor LaFave has observed:

> [I]n cases where police did not avail themselves of an earlier opportunity to get a warrant, this has been a dominant factor in the holdings that there were not exigent circumstances. This means that

> if nothing has occurred which could be expected to alert the persons inside the premises that they were the object of police suspicion, the mere fact that persons are inside with evidence of a destructible nature is no basis for a warrantless search.

Wayne R. LaFave, *Search and Seizure, A Treatise on the Fourth Amendment,* § 6.5(b), at 345 (3d ed. 1996) (citations omitted). Similarly, the Supreme Court of New Hampshire has held:

> [W]here the police, with ample probable cause, time to obtain a warrant, and time for reflection, choose to pursue a course of action which they know at the outset will present a situation requiring an emergency entrance into a person's home, we hold that they should obtain a warrant and that they may not rely on the expected exigency to justify their entry.

*State v. Santana,* 133 N.H. 798, 807, 586 A.2d 77, 83 (1991).

■ The foregoing holdings provide sound guidance in determining whether a warrantless entry into a person's home is justified by a claim of exigent circumstances. Using this guidance, we conclude that the trial court erred in denying Appellant's motion to suppress. It is undisputed that the police had probable cause to obtain an anticipatory search warrant, conditioned upon the delivery of the package containing the methamphetamine. They also had the opportunity to obtain a search warrant for Appellant's home after the controlled delivery occurred, as there was no evidence presented below indicating that Appellant was aware of the police surveillance until the officers approached his home and announced their presence. Given these opportunities, there was no urgency to the situation, at least not until the police made their presence known. Instead of availing themselves of these opportunities, however, the officers chose to approach the residence moments after the controlled delivery, announce their presence, and attempt to gain consent from Appellant to search the residence. Under the circumstances, the officers reasonably could have foreseen that when Appellant became aware of their presence, he would likely attempt to destroy the evidence.

■ In sum, given the totality of the circumstances in this case, we conclude that the warrantless entry into Appellant's home was not justified by the officers' stated fear that evidence was about to be destroyed. Only one officer actually heard the sound of

someone running down the hallway, and he candidly admitted that he could not be certain whether he was inside the screened-in porch area or in the doorway of the residence at the time. In any event, as stated above, the situation was not so urgent that police could not have secured a search warrant, either before or after the controlled delivery. The only exigent circumstance offered by the State, that the officers feared that evidence was about to be destroyed, was effectively created by the officers' chosen tactics in this case.[1] Accordingly, the warrantless entry was unreasonable under the Fourth Amendment, and all evidence gained as a result of the intrusion must be suppressed. We thus reverse the judgment of conviction and remand this matter to the trial court for proceedings consistent with this opinion. It is not necessary to address Appellant's second point on appeal regarding the prosecution's reference to Appellant's criminal history during the trial, as we agree with the court of appeals that this issue is not likely to recur on retrial.

Reversed and remanded.

DICKEY, C.J., and GLAZE, J., dissent.

TOM GLAZE, Justice, dissenting. I respectfully dissent. My primary difference with the majority opinion is that it improperly and erroneously states, "The testimony of the officers during the suppression hearing was *inconclusive* as to when the exigent circumstances arose." The majority is wrong. The majority places a great deal of emphasis on inferences drawn from some of the testimony Officers Dennis Roberts and Jim Culp gave at the suppression hearing. However, the record clearly reflects testimony on which the trial judge relied in finding the officers had probable cause and exigent circumstances to justify their entry into the mobile home to effect Mann's arrest. For example, Officer Roberts testified that, as the officers entered the porch area, the trailer door was standing open, and' when Roberts heard someone running, the officers announced that

---

[1] The dissent opines that Appellant's actions, not the police's chosen tactics, created the exigent circumstances that justified the officers' warrantless entry into his home. To support this opinion, the dissent cites to the Supreme Court's holding in *Richards v. Wisconsin*, 520 U.S. 385 (1997). *Richards* is completely distinguishable from this case in that the Wisconsin officers had obtained a search warrant for Richard's motel room. Thus, their "no knock" entry was not a warrantless entry, as is the case here. Indeed, had the facts in this case been as they were in *Richards*, we would uphold the officers' entry and subsequent search of Appellant's residence.

they were the State police. In addition, Officer Culp testified that, as he and Roberts entered the porch, they called out "police." Culp averred that he remembered hearing the commode flush. (Abs. testimony pp. 4, 6, 11).

Based on the foregoing and other testimony before the trial judge at the suppression hearing, the judge quite properly made the following findings and ruling:

> THE COURT: The Court has viewed the exhibits and my notes regarding the testimony taken herein at both the prior hearing and today's hearing. The Court finds that under the circumstances the issue presented is whether or not there was an exception to the warrant for entry into Mr. Mann's house to apply to this fact situation.
>
> The only exception that applies to this situation would be exigent circumstances and whether or not those existed, so that the warrant requirement was not applicable because of the exigent circumstances. There are exceptions to both the warrant requirement and exceptions to the knock and announce rule which has been dealt with in the case Mr. Spain provided, United States of America versus Mendoza. One of the exceptions to the knock and announce rule is exigent circumstances as well.
>
> In this case, Mr. Colvin [defense counsel] argues that the police didn't know that Mr. Mann was committing a crime. The issue is not beyond a reasonable doubt proof in the circumstances. The issue is as Mr. Spain [prosecutor] argued, I think, probable or reasonable cause. And, secondly, the police were in possession of probable or reasonable cause that Johnny Mann was in possession of methamphetamines in violation of Arkansas law when they went to his house. They [the officers] knew there were methamphetamines, *they had been delivered, and they* as a body *were in possession of sufficient facts to lead to a reasonable conclusion of that probable cause.*
>
> They entered a *porch*, which was opened, *the door was open* and the porch as well and the contents of that front porch were visible to anyone on the outside. And *at the time they were on this porch, they announced that they were police. They then heard someone running in the trailer. That led to the reasonable conclusion that Mr. Mann, who they knew was in possession of these drugs at this time, was trying to do something to dispossess himself of them or destroy them. They then entered the trailer with this knowledge, this information.*

> The Court finds that it was reasonable that they concluded that the evidence was attempting to be destroyed and thus that there were exigent circumstances concerning their entry that a warrant was not required. So, therefore, the motion to suppress the permission to search which flowed therefrom and eventually led to the removal of the commode . . . that they busted and the drugs being found is denied.
>
> The Court further finds that the statement made by Mr. Mann was made with full advice and knowledge of his rights and after he knowingly, voluntarily, relinquished those rights and that his statement is voluntary. The motion to suppress his statement is also denied.

(Emphasis added.)

It is settled law that, in reviewing a ruling denying a defendant's motion to suppress, this court makes an independent determination based on the totality of the circumstances and views the evidence in the light most favorable to the State; we reverse only if the trial court's ruling is clearly against the preponderance of the evidence. *Griffin v. State*, 347 Ark. 788, 67 S.W.3d 582 (2002). Here, the trial court found that, as the officers approached the open door of the porch, Officer Culp heard footsteps inside the trailer home, announced "there's someone running," *and then the officers entered the open door of the trailer. When the officers heard someone running in the trailer, they reasonably concluded Mann was trying to destroy the evidence.* The majority court simply ignores the trial judge's reasonable analysis of the evidence that supports his ruling to deny Mann's motion to suppress. Instead, this court substitutes its own discretion and weighing of the evidence to reach a result contrary to the one reached by the trial judge. The majority is clearly wrong in doing so.

The majority also posits that the investigating officers themselves had created the exigent circumstances, and, therefore, those exigent circumstances could not be relied upon to justify this warrantless entry. Again, I disagree.

Our law is settled that the destruction of evidence is an established exigent circumstance that can justify a warrantless entry. *Norris v. State*, 338 Ark. 397, 993 S.W.2d 918 (1999). However, the majority court cites holdings in the Eighth Circuit Court of Appeals for the proposition that exigent circumstances created by the police officers themselves cannot be relied on to

justify a warrantless entry. *United States v. Duchi*, 906 F.2d 1278 (8th Cir. 1990); *United States v. Johnson*, 904 F.2d 443 (8th Cir. 1990). The majority court submits that the officers in this case could have reasonably foreseen that their decision to approach Mann's residence without a warrant, immediately after completing a controlled delivery of methamphetamine, would likely result in an attempt to destroy evidence. Relying on *Duchi*, the majority contends that the officers had the opportunity to secure a warrant to search Mann's trailer; it opines that the officers had probable cause to believe Mann was committing the crime of possession of a controlled substance, since the package he was handed was accepted by him.

Our court of appeals has held that the exigency may arise at any time, and the fact that the police might have obtained a warrant earlier does not negate the possibility of a current situation's necessitating prompt police action. *See Clinkscale v. State*, 13 Ark. App. 149, 680 S.W.2d 728 (1984) (quoting from *Cardwell v. Lewis*, 417 U.S. 583 (1974)). In the present case, the officers were placed in the position of having lawfully intercepted a package which contained methamphetamine, but the package was addressed to a Clark Nuss, 424 Ashley 81 West, Hamburg, Arkansas. The officers subsequently discovered Mann resided at the 424 Ashley 81 address, and that Mann and Nuss had previously lived in Crescent City, California. Because the package bore a Crescent City return address, the Arkansas officers could not know if the package was sent to Nuss or whether Mann would accept it. Consequently, they decided to make a controlled delivery of the package.

It was at this stage of the controlled delivery that the officers could be certain they had probable cause. This case is most similar to the Eighth Circuit's decision in *Johnson, supra*. There, the agents knew neither whether the address they credited the package label with describing was the intended address, nor whether the occupant of that address would be willing to accept the package. The *Johnson* court, relying on *United States v. Palumbo*, 735 F.2d 1095 (8th Cir. 1984), *cert. denied*, 469 U.S. 934 (1984), stated that officers conducting an investigation "were not required to seek a warrant as soon as they had probable cause to suspect a conspiracy to distribute cocaine [but] could legitimately wait in order to gather additional evidence."

The majority court here attempts to challenge the officers' failing to obtain a warrant immediately after Mann approached his

regular mail carrier and asked if there were any packages for Mann, and his carrier said another carrier may possibly have his mail. Of course, even if the officers suspected at this point that Mann was referring to the Nuss package, they could not be sure until he accepted the package. It was only when Mann accepted the Nuss package that they had probable cause. As in the holding of *Palumbo*, the officers were not required to seek a warrant at that moment.

In conclusion, it is my strongly-held view (and that of the trial judge, I might add) that the officers had not created the exigency in this case. Instead, Mann himself caused the officers to enter the trailer when he started running and the toilet was flushed after the officers identified themselves as they approached the porch leading to the open door of the trailer. *Cf. Richards v. Wisconsin*, 520 U.S. 385 (1997) (where Court upheld a "no knock" entry into Richards' motel room, finding the actual circumstances — Richards' apparent recognition of the officers combined with the easily disposable nature of the drugs — justified the officers' ultimate decision to enter without first announcing their presence and authority).

The court in *Johnson* made the following statement which I think is insightful:

> Indeed, it is for the very purpose of evading detection that such fictional names and disarranged addresses are frequently employed by those who deal in drugs. If Johnson and his associates fear warrantless entries into their homes, they would be well advised to address their drug shipments to real people at clearly identifiable addresses.

*Id.* at 447.

In the present case, Mann obviously was awaiting a delivery of methamphetamine, but he attempted to disassociate himself from the package containing the methamphetamine by the use of Clark Nuss's name. The trial judge was correct in denying Mann's motion to suppress, and I would affirm the judge.

DICKEY, C.J., joins this dissent.