Patricia STEINMETZ and Michael Steinmetz *v.*
STATE of Arkansas

CR 05-455

234 S.W.3d 302

Supreme Court of Arkansas
Opinion delivered April 27, 2006

*Patrick J. Benca* and *John Wesley Hall, Jr.*, for appellants.

*Mike Beebe*, Att'y Gen., by: *Misty Wilson Borkowski*, Ass't Att'y Gen., for appellee.

R OBERT L. BROWN, Justice. Appellants Patricia and Michael Steinmetz appeal from their conditional pleas of guilty to four offenses: simultaneous possession of drugs and firearms, possession of methamphetamine with intent to manufacture or deliver, possession of marijuana with intent to manufacture or deliver, and maintaining a drug premise. Each person was sentenced to a total of ten years' imprisonment. They assert two points on appeal. We hold that no reversible error occurred, and we affirm the judgments of conviction.

The facts, according to the testimony presented at the suppression hearing, are these. On May 11, 2004, Deputy Mark Swagerty of the Pulaski County Sheriff's Office received a call from his dispatcher at 9:15 p.m. to respond to a burglary alarm, which had been activated at a residence located at 98 Creekwood in Jacksonville. According to the audio tape of the dispatch call, Deputy Swagerty was advised that the residents of the home were en route and would arrive at the residence in a red Chevrolet Avalanche in approximately twenty minutes. Deputy Swagerty arrived at the residence at 9:27 p.m. and checked the perimeter of the house. Upon doing so, he found that the door in the garage area of the carport was open. At that point, he could not tell if anyone was in the home. He yelled through the open door and announced himself. He received no response and advised his dispatcher that he was going in to check the residence. In accordance with the policy of the Sheriff's Office, he entered the home to check and make certain that no one was there committing a crime or in need of help. Deputy Swagerty testified that he thought anything could have been happening in the home, such as somebody inside needed help and was hurt or that someone had burglarized the home and shot someone who could not respond.

Upon entering the back northwest bedroom of the home, Deputy Swagerty "noticed a whole bunch of narcotic paraphernalia laying on top of the dresser in plain view, [including] . . . straws, smoking devices, [and] white powder residue." He further saw white-powder bags in an open drawer underneath. After finding these items, Deputy Swagerty contacted his Narcotics Division. While Deputy Swagerty was in the bedroom and on the telephone, Mrs. Steinmetz arrived and, according to Deputy Swagerty, started "freaking out[.]" She called her husband and told him to hurry home because the police were in their bedroom. At that time, under the instruction of his supervisor, Deputy Swagerty placed Mrs. Steinmetz under arrest, and she was taken outside to the patrol unit by Deputy Howard.

By that time, Sergeant Herman Hutton had arrived at the home, and he, Deputy Howard, and Deputy Swagerty seized the items in plain view. They secured the residence, and Sergeant Hutton prepared an affidavit for a search warrant for both the Steinmetzes' home and their vehicle. Based on that affidavit, Sergeant Hutton obtained a search warrant the next morning. Several items were subsequently seized from the residence, including guns and drug paraphernalia. Affidavits for arrest were completed, and both Steinmetzes were arrested.

The Steinmetzes filed a motion to suppress the items seized. After hearing testimony and the arguments of counsel, and after reading the Steinmetzes' bench brief, the circuit court ruled that based on the surrounding circumstances, Deputy Swagerty had probable cause based on exigent circumstances to enter the Steinmetzes' residence, which led to the search warrant. For that reason, the circuit court denied the Steinmetzes' motion to suppress.

The Steinmetzes subsequently entered conditional pleas of guilty, reserving the right to appeal the circuit court's ruling, and were sentenced to ten years' imprisonment, as already stated.

The Steinmetzes claim that nothing was presented by the State to justify Deputy Swagerty's entry into their residence without a warrant. They contend that the facts and circumstances of the entry and the subsequent search clearly indicated that Deputy Swagerty was not operating under a belief that probable cause existed. Particularly, they emphasize that Deputy Swagerty did not pull his weapon upon entering the house or wait for a backup officer. They additionally urge that the facts in this case fall considerably short of establishing probable cause under the

totality-of-the-circumstances test. Instead, they maintain, Deputy Swagerty merely justified his entry based on a policy of securing a residence, which was established by the Pulaski County Sheriff's Office. Citing to cases in other jurisdictions, which they claim are distinguishable from the facts of their case, the Steinmetzes insist that Deputy Swagerty had no information that anyone was at risk of harm inside the residence or information that there was a robbery in progress. To the contrary, they argue that Deputy Swagerty went into the house without his weapon drawn, without waiting for backup, and pursuant to nothing more than a departmental policy. Finally, they urge that the Arkansas Constitution, specifically art. 2, § 15, provides greater protection from unreasonable searches and seizures than does the Fourth Amendment.

In reviewing a circuit court's denial of a motion to suppress evidence, this court conducts a *de novo* review based on the totality of the circumstances. *See Baird v. State*, 357 Ark. 508, 182 S.W.3d 136 (2004). We review findings of historical facts for clear error, and we determine whether those facts give rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by the circuit court. *See id.*

Warrantless searches in private homes are presumptively unreasonable, and the burden is on the State to prove that the warrantless activity was reasonable. *See Baird v. State, supra.* An exception to the warrant requirement, however, occurs where, at the time of entry, there exists probable cause and exigent circumstances. *See Mann v. State*, 357 Ark. 159, 161 S.W.3d 826 (2004). Probable cause is determined by applying a totality-of-the-circumstances test and exists when the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution to believe that an offense has been or is being committed. *See Baird v. State, supra.* Exigent circumstances are those requiring immediate aid or action, and, while there is no definite list of what constitutes exigent circumstances, several established examples include the risk of removal or destruction of evidence, danger to the lives of police officers or others, and the hot pursuit of a suspect. *See Mann v. State, supra.* Under our case law, this court may only examine those exigent circumstances that existed at the time of the entry. *See id.*

In holding as we have regarding exigent circumstances, this court has noted with approval the United States Supreme Court's

recognition of the emergency exception to the warrant requirement in its Fourth Amendment jurisprudence. *See Wofford v. State*, 330 Ark. 8, 952 S.W.2d 646 (1997) (citing *Thompson v. Louisiana*, 469 U.S. 17 (1984); *Mincey v. Arizona*, 437 U.S. 385 (1978)). Moreover, Rule 14.3 of the Arkansas Rules of Criminal Procedure establishes the emergency exception to the warrant requirement and provides in pertinent part:

> An officer who has reasonable cause to believe that premises or a vehicle contain:
>
> (a) individuals in imminent danger of death or serious bodily harm . . . .
>
> . . .
>
> may, without a search warrant, enter and search such premises and vehicles, and the persons therein, to the extent reasonably necessary for the prevention of such death, bodily harm, or destruction.

Ark. R. Crim. P. 14.3 (2005). We have further emphasized that during the course of conducting legitimate emergency activities, police officers may seize any evidence that is in their plain view. *See Wofford v. State, supra* (quoting *Mincey v. Arizona*, 437 U.S. 385, 393 (1978)).

■ There is no doubt in the instant case that probable cause and exigent circumstances existed. A security alarm had been activated at the Steinmetzes' residence that they had installed. Upon Deputy Swagerty's arrival, he found a door to the house open. The Pulaski County Sheriff's Office had a policy to secure the premises, and it was certainly reasonable for Deputy Swagerty to believe that a crime might be in progress and for him to begin to secure the premises, including entry into the residence. Whether the owner of the residence was en route is of no moment. Furthermore, the fact that Deputy Swagerty did not pull his weapon upon entering the house or wait for backup before doing so does not diminish the exigency of the situation. Because the warrantless entry was permissible, any subsequent seizure of evidence in plain view was also permissible. We hold that the circuit court did not err in denying the Steinmetzes' motion to suppress.

Our holding is bolstered by a decision of the federal district court for the Western District of Virginia, cited to us by the State. *See United States v. Porter*, 288 F. Supp. 2d 716 (W.D. Vir. 2003). In *Porter*, a police dispatcher transmitted a radio call regarding an activated home-security alarm at Porter's residence. Officer Brunson arrived and heard no sounding alarm. As he approached the front door of the townhouse to begin a survey of the home, a neighbor told him that a young child had opened the townhouse's back door, possibly activating the alarm.

After talking with the neighbor, Officer Brunson surveyed the area near the front door and found no signs of forced entry or other unusual circumstances. He knocked on the door but received no response. He proceeded to the rear door with another police officer who had arrived. Another nearby resident emerged from the neighbor's residence and explained that her little girl had accidentally opened the rear door of Porter's home, while the family was at the neighbor's house for a cookout. After checking Porter's back door, the officers discovered it was closed, but unlocked, with no visible signs of forced entry.

The police officers then entered Porter's home through the back door. Officer Brunson announced his presence but received no response. The officers next conducted a sweep of the entry level of the home to determine if a crime was in progress or to determine if anyone was in need of help. After proceeding to the first floor, Officer Brunson saw clear plastic bags containing a green plant substance resembling marijuana on the kitchen table and on a nearby couch. On the second floor of the home, he saw large quantities of money on the top of a dresser. No one was in the home. A search warrant was issued later, and bags of marijuana, a gun, weight scales, money, and plastic wrap coated in motor oil or grease were seized.

In denying Porter's motion to suppress the evidence seized, the federal district court said that "the activation of an alarm in conjunction with additional information supporting the possibility of a break-in is sufficient to support police officers' determination that an exigency exists." *Id.* The court then said:

> The very purpose for a home security alarm is to signal that something may be amiss. In the face of an alarm, officers may reasonably conclude that a burglary may be in progress and may conclude, as here, that a neighbor's explanation to the contrary is

> not entirely credible. While this court by no means suggests that the police have license to enter a private residence every time an alarm is activated, they do have a duty to investigate, and, when the facts and circumstances suggest reasonable suspicion that an exigency exists, to enter the home. In the face of such circumstances, "[i]t would defy reason to suppose that [law enforcement officers] had to secure a warrant before investigating, leaving the putative burglars free to complete their crime unmolested." *United States v. Singer*, 687 F.2d 1135, 1144 (8th Cir. 1982).

*Id.* at 721-22. We agree with this reasoning of the federal district court in Virginia. Other jurisdictions have denied suppression of evidence seized in burglar-alarm situations. *See, e.g., United States v. Dighera*, 2 F. Supp. 2d 1377 (D. Kan. 1998) (holding that the government proved its burden that police officers reasonably responded to the exigent circumstances of an activated security alarm, the front door being open, and receiving no response from inside; that there had been false alarms in the past was of no consequence); *United States v. Tibolt*, 72 F.3d 965 (1st Cir. 1995) (holding that police officer had probable cause to believe a breaking and entering had occurred or was being committed at appellant's residence where a security alarm had been activated, no answer was received by the inquiring security company, the rear deck door was found unlocked, and the officer received no response to his effort to communicate with anyone who might be inside; further, there were exigent circumstances permitting an immediate warrantless entry where, without entering, police officer could not know whether an intruder had managed to get into the residence and possibly injured a resident, then fled, or remained in the residence and was forcibly detaining the resident); *Reardon v. Wroan*, 811 F.2d 1025 (7th Cir. 1987) (holding, in a civil-rights suit, that exigent circumstances were present where the police officers were faced with a call that a burglary was in progress at a fraternity house during a time of year in which the students were on break and burglaries were known to occur more frequently, a single car was in the driveway, and the door to the residence was unlocked); *People v. McKnight*, 261 A.D.2d 926, 689 N.Y.S.2d 832 (1999) (holding that court properly denied defendant's motion to suppress where while investigating a 911 report of a burglar alarm at an apartment building, police officers legally entered defendant's apartment where they saw, but did not seize, two loaded automatic weapons as well as cocaine

and scales, as the officers had reasonable grounds to believe that there was an emergency at the apartment requiring their immediate assistance).[1]

Because we hold that probable cause existed based on Deputy Swagerty's assessment of exigent circumstances, we need not address the Steinmetzes' second argument regarding *Wong Sun v. United States*, 371 U.S. 471(1963), and the fruit of the poisonous tree.

Affirmed.

---

[1] While the Steinmetzes urge that the Arkansas Constitution provides greater protection than the Fourth Amendment, they do not develop that argument before this court; nor did they do so before the circuit court. They simply cite to Ark. Const., art. 2, § 15, without providing any argument involving that provision. Because they failed to develop their arguments involving the Arkansas Constitution at either level, we decline to address their claim. *See, e.g., Raymond v. State*, 354 Ark. 157, 118 S.W.3d 567 (2003).